IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-40431
_____


ASHLAND CHEMICAL INC

                            Plaintiff-Appellant,

        v.


BARCO INC, ET AL
                            Defendants,

MESH PLASTICS LTD

                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
September 15, 1997

Before REAVLEY, KING, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

    Plaintiff-appellant Ashland Chemical, Inc. appeals the
district court's order granting defendant-appellee Mesh Plastics,
Ltd. an award of legal fees under Article 6, Section 9 of the
Eastern District of Texas's Civil Justice Expense and Delay
Reduction Plan.  Because we find that Article 6, Section 9 of
that Plan is a fee-shifting provision that was not authorized by
Congress, we reverse the district court's award of legal fees to
Mesh.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ashland Chemical, Inc. (Ashland) sued Mesh Plastics, Ltd. (Mesh), Barco, Inc., and Lakiva Corp. in September of 1992, claiming that it suffered over $200,000 in damages as a result of defects in chemical holding tanks that it purchased from defendants. Mesh's primary defense was that its agent was unauthorized to bind it to the sales agreement upon which Ashland relied. Following the entry of default judgments against the other two defendants, Mesh presented Ashland with a written offer of judgment in the amount of $1000 pursuant to Article 6, Section 9 (the Local Rule) of the Civil Justice Expense and Delay Reduction Plan (CJEDR Plan) of the Eastern District of Texas. The Local Rule provides as follows:

> **(9) Offer of Judgment.** At the Management Conference or any time thereafter, a party may make a written offer of judgment. If the offer of judgment is not accepted and the final judgment in the case is of more benefit to the party who made the offer by 10%, then the party who rejected the offer must pay the litigation costs incurred after the offer was rejected. In personal injury and civil rights cases involving contingent attorneys' fees, the award of litigation costs shall not exceed the amount of the final judgment. The Court may, in its discretion, reduce the award of litigation costs in order to prevent undue hardship to a party.
>
> "Litigation costs" means those costs which are directly related to preparing the case for trial and actual trial expenses, including but not limited to reasonable attorneys' fees, deposition costs and fees for expert witnesses.

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, art. 6, § 9 (1997). In accordance with the requirements of the Local Rule, Mesh set a

2

deadline of May 1, 1993 for acceptance or rejection of the offer. In addition, Mesh's counsel stated in his letter: "If for some reason you believe that the time allowed is unreasonable, please contact me and perhaps we can make other arrangements." Ashland replied that it was unable to evaluate the offer because it was still awaiting a response to an outstanding discovery request. On May 1, 1993, the offer expired.

On March 28 and 29, 1994, the case was tried before a jury. The jury returned a verdict in favor of Mesh, and the court entered a take-nothing judgment and dismissed the case on the merits. Thereafter, Mesh filed a Motion for Assessment of Litigation Costs seeking $53,465.60 in attorneys' fees and expenses pursuant to the Local Rule. The district court granted Mesh's motion and ordered Ashland to pay the requested amount. Ashland then filed a Motion for Reconsideration, arguing on various theories that the Local Rule was invalid. The district court denied the motion in a Memorandum Opinion and Order, and Ashland now appeals that decision.


## II. STANDARD OF REVIEW

We review de novo the conclusions of law made by a district court. Prudhomme v. Tenneco Oil Co., 955 F.2d 390, 392 (5th. Cir.), cert. denied, 506 U.S. 826 (1992). We accept a district court's factual findings unless they are clearly erroneous. Id. In this case, the issues raised on appeal are questions of law.

3

# III. DISCUSSION

Ashland argues that the Local Rule is a substantive fee-shifting provision that was not authorized by Congress. Mesh, however, insists that the Civil Justice Reform Act of 1990 (CJRA), 28 U.S.C. §§ 471-482, implicitly authorizes the Local Rule. Ashland disagrees, contending that if Congress had intended to authorize such action, it would have included explicit language to that effect in the statute. Ashland further argues that because the Local Rule is substantive in nature, under the Supreme Court's decision in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), it must be specifically authorized by Congress in order to be valid. Mesh counters that Alyeska does not control the outcome of this case, and argues instead that the Court's more recent decision in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), is the most relevant precedent.[1]

## A. Fee-Shifting Rules Generally

---

[1] Ashland advances several alternative arguments for the invalidity of the Local Rule. Ashland first argues that the Local Rule impermissibly conflicts with Federal Rules of Civil Procedure 68 and 83; the Rules Enabling Act, 28 U.S.C. § 2071(a) (1994); and the Fees Act of 1873, 28 U.S.C. § 1920 (1994). Ashland insists that these departures from established law were not authorized by the CJRA. In addition, Ashland challenges the Local Rule as violative of the Equal Protection Clause of the United States Constitution. Ashland also argues that even if the Local Rule is valid, the district court erred in awarding fees to Mesh because the offer of judgment was unreasonable and was not made in good faith. We decline to address these alternative arguments because we find that the Local Rule is a substantive fee-shifting provision which was not authorized by the CJRA.

This court has held that, "in an ordinary diversity case, state rather than federal law governs the issue of the awarding of attorney's fees." Shelak v. White Motor Co., 636 F.2d 1069, 1072 (5th Cir. Unit A Feb. 1981). It is undisputed that under Texas law Mesh would not be entitled to attorneys' fees because Texas follows the "'American Rule' which imposes the burden of attorney's fees upon the individual litigants." Crenshaw v. General Dynamics Corp., 940 F.2d 125, 129 (5th Cir. 1991).

In addition, in Alyeska, the Supreme Court addressed the issue of fee shifting:

> "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."

421 U.S. at 259 n.31 (quoting 6 J. MOORE, FEDERAL PRACTICE § 54.77(2), at 1712-13 (2d ed. 1974)). Alyeska involved a suit brought by environmental groups that were attempting to bar the construction of an oil pipeline. Id. at 241-43. The sole issue before the Supreme Court was the lower court's decision to award attorneys' fees to the environmental groups where no applicable statute provided for such an award. Id. at 245. Relying on the "American rule"--"the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser"-- the Court held that "it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner and to the extent urged by respondents and approved by the Court of Appeals." Id. at 247. Although the

5

Court took care to note that courts possess "inherent power . . . to allow attorneys' fees in particular situations, unless forbidden by Congress," it declined to expand the scope of those situations.  Id. at 259.

More recently, however, the Supreme Court has defined and limited the scope of Alyeska's determination that fee shifting is substantive in nature and must be congressionally authorized.  In Chambers, the district court, relying on its inherent power to sanction bad-faith conduct, ordered defendant Chambers and his attorney to pay almost one million dollars in attorneys' fees and expenses.  501 U.S. at 40.   The Supreme Court upheld the award, holding that when sanctions under applicable rules and statutes are inadequate, a court may call upon its inherent powers to "assess attorney's fees when a party has '"acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'"  Id. at 45-46 (quoting Alyeska, 421 U.S. at 258-59 (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129 (1974))).  Further, the Court noted that when a federal court sits in a diversity case, its inherent power to use fee shifting as a sanction for bad-faith conduct is not limited by the forum state's law regarding sanctions.  Id. at 52-53.  The Court distinguished Alyeska, stating that "[t]he limitation on a court's inherent power described [in footnote 31 of Alyeska] applies only to fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees."  Id. at 52.

6

Taken together, these cases stand for the proposition that substantive departures from the American rule and its traditional exceptions must be authorized by Congress. See id. at 47. Indeed, as the Court explained in Chambers:

> [T]he narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders . . . .
>
> . . . Nevertheless, "we do not lightly assume that Congress has intended to depart from established principles" such as the scope of a court's inherent power.

Id. (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982)). Thus, Chambers did not eviscerate the core holding of Alyeska that congressional authorization is necessary for novel departures from the American rule; rather it merely served to clarify that, despite Alyeska, courts retained their traditional, inherent power to sanction bad-faith conduct through the assessment of costs and attorneys' fees.

We therefore must determine whether the Local Rule is procedural, like sanctions for bad-faith conduct, or substantive.[2] Whether a rule that allows fee shifting is

---

[2]    At oral argument Mesh suggested that we analyze the Local Rule in this case with the same deference that we accord the Federal Rules of Civil Procedure. Under the framework advanced by the Supreme Court in Sibbach v. Wilson & Co., 312 U.S. 1 (1941), and refined in Hanna v. Plumer, 380 U.S. 460 (1965), a federal procedural rule must "really regulate[] procedure" in order to apply in a diversity case despite a conflict with state law. Sibbach, 312 U.S. at 14. Under this test, the Rules Enabling Act, 28 U.S.C. §§ 2071-2077 (1994), has been interpreted to authorize any Federal Rule of Civil Procedure that is procedural in form and has a procedural purpose, despite the fact that such a rule may have some inadvertent effect on the

7

procedural or substantive depends on the purposes and policies

behind the rule itself.  Hanna v. Plumer, 380 U.S. 460, 471

(1965) ("The line between 'substance' and 'procedure' shifts as

the legal context changes.  'Each implies different variables

depending upon the particular problem for which it is used.'"

(quoting Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945))).

Indeed, as the Chambers Court noted, the distinction is closely

tied to the "'twin aims of the Erie rule:  discouragement of

forum-shopping and avoidance of inequitable administration of the

laws.'"  501 U.S. at 52 (quoting Hanna, 380 U.S. at 468).   Under

---

litigants' substantive rights.  Indeed, the Court has stated that
when a Federal Rule of Civil Procedure is at issue,

> the question facing the court is a far cry from the
> typical, relatively unguided Erie choice:  the court
> has been instructed to apply the Federal Rule, and can
> refuse to do so only if the Advisory Committee, [the
> Supreme] Court, and Congress erred in their prima facie
> judgment that the Rule in question transgresses neither
> the terms of the Enabling Act nor constitutional
> restrictions.

Hanna, 380 U.S. at 471.

    The Local Rule, however, is not a Federal Rule of Civil
Procedure.  It is not a rule that is followed throughout the
nation or even throughout this Circuit, and although it is the
product of careful consideration by practitioners and judges, it
was not subject to possible congressional veto as were the
Federal Rules of Civil Procedure.  See Sibbach, 312 U.S. at 14-15
(discussing the submission of the Federal Rules of Civil
Procedure to Congress so that it could "examine them and veto
their going into effect if contrary to the policy of the
legislature").  Indeed, at this point not even one other district
has included a similar fee-shifting provision in its CJEDR plan.
As a result, we decline to extend Hanna's more lenient scrutiny
of the Federal Rules of Civil Procedure to include the Local
Rule.

the doctrine of <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938), in a diversity case a federal court must apply the substantive law of the state while following federal procedural rules.  <u>Hanna</u>, 380 U.S. at 465, 471.  Unfortunately, a clear and obvious distinction between rules of procedure and rules of substance does not always exist.  Regarding the difficulty of this determination, the Supreme Court has stated:

> "[T]he question is not whether [something] is deemed a matter of 'procedure' in some sense.  The question is . . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?"

<u>Id.</u> at 466 (quoting <u>Guaranty Trust</u>, 326 U.S. at 109).  The award of attorneys' fees pursuant to a plan adopted in order to decrease cost and delay in the federal courts presents just such a difficult issue.

Mesh argues that, in this case, the policies behind the rule more closely resemble those at issue in <u>Chambers</u>.  Mesh contends that the Local Rule is procedural in nature because it will not affect parties' choice of forum; rather, it will simply serve to regulate their behavior before the court, forcing them to think more seriously before refusing an offer of judgment.  We disagree.

Admittedly, important procedural goals underlie the Local Rule, but a rule's stated purpose is not the sole consideration in determining whether it is substantive or procedural.  <u>See</u> <u>Hanna</u>, 380 U.S. at 466-71.  Application of the Local Rule, unlike the imposition of bad-faith sanctions in <u>Chambers</u>, is tied to the

9

outcome of the case.[3]  Under the Local Rule, for example, a defendant who receives a judgment that is more than 10% better than her earlier offer of judgment is, at least in a limited sense, a prevailing party because the end result of the litigation leaves her better off than if she had settled for the proposed amount.  Moreover, having won a take-nothing judgment on a claim of over $200,000, Mesh actually was the prevailing party in this case.  As the Supreme Court stated in Chambers, a fee-shifting provision "which permits a prevailing party . . . to recover fees" embodies a substantive policy.  501 U.S. at 52.  As a result, we disagree with the district court's conclusion and find that the Local Rule is substantive in nature and therefore requires congressional approval as mandated by the Supreme Court in Alyeska.

## B.  Congressional Authorization of Fee Shifting

Mesh next argues that Congress authorized the Local Rule in the CJRA.  In general, the capacity of the federal courts to prescribe rules of practice and procedure is governed by the Rules Enabling Act, 28 U.S.C. §§ 2071-2077 (1994), which states that "[s]uch rules shall not abridge, enlarge or modify any substantive right." Id. § 2072(b).  In 1990, however, Congress

---

[3]     The Local Rule, when applied in a diversity case, also implicates the Erie problem of forum-shopping.  See Erie, 304 U.S. at 75.  Undoubtedly, the possibility of receiving or paying attorneys' fees will be a consideration when plaintiffs decide where to file a diversity action and when defendants decide whether to remove such an action to federal court.

passed the CJRA in an effort to encourage district courts to implement innovative strategies for reducing the costs and delays of civil litigation. See 28 U.S.C. § 471 (1994). The CJRA states:

> There shall be implemented by each United States district court . . . a civil justice expense and delay reduction plan. . . . The purposes of each plan are to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes.

Id. Pursuant to this congressional mandate, the United States District Court for the Eastern District of Texas adopted its CJEDR Plan, which includes the Local Rule. See UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, art. 6, § 9 (1997). The question that we must address is whether the CJRA authorizes the adoption of a fee-shifting provision such as the Local Rule.[4]

Mesh argues that the following catch-all provision of the CJRA implicitly authorizes the Local Rule:

> (b) In formulating the provisions of its civil justice expense and delay reduction plan, each United States district court, in consultation with an advisory group appointed under section 478 of this title, shall

---

[4] We assume, without deciding, that it was within the power of Congress to authorize the district courts to create fee-shifting provisions such as the Local Rule. We note however, that it is not clear that Congress has the power to supplant the American rule in diversity cases. Cf. Hanna v. Plumer, 380 U.S. 460, 471-72 (1965) ("[N]either Congress nor the federal courts can, under the guise of formulating rules of decision for federal courts, fashion rules which are not supported by a grant of federal authority contained in Article I or some other section of the Constitution; in such areas state law must govern because there can be no other law.").

11

> consider and may include the following litigation management and cost and delay reduction techniques:
>
> . . . .
>
> (6) such other features as the district court considers appropriate after considering the recommendations of the advisory group referred to in section 472(a) of this title.

28 U.S.C. § 473(b)(6) (1994).

In addition, both Mesh and the district court direct our attention to Friends of the Earth, Inc. v. Chevron Chemical Co., 885 F. Supp. 934 (E.D. Tex. 1995). In Friends of the Earth, the court also addressed the propriety of the Local Rule. Id. at 938. That court determined that the language of § 473(b)(6) of the CJRA was "clear and unambiguous" in authorizing the rule's adoption. Id. We disagree. In interpreting the CJRA, the Friends of the Earth court stated that, "[w]hen the language of a statute is unambiguous, 'the court does not look beyond its express terms.'" Id. at 939 n.3 (quoting United States v. Evinger, 919 F.2d 381, 383 (5th Cir. 1990)). We do not dispute this rule of interpretation, but this statute is not unambiguous on the issue of fee shifting.

We begin our statutory analysis with the actual language of the provision at issue. Pongetti v. General Motors Acceptance Corp. (In re Locklin), 101 F.3d 435, 439 (5th Cir. 1996) ("'The starting point in every case involving a construction of a statute is the language itself.'" (quoting Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 322, 330 (1978))). The text of the CJRA makes no mention of fee shifting.

12

Where a statute is silent or ambiguous as to an issue, we next look to the legislative history for guidance as to the intent of the legislators.  <u>United States v. Fitzhugh</u>, 984 F.2d 143, 146 (5th Cir.), <u>cert. denied</u>, 510 U.S. 895 (1993).  Neither this court nor either of the parties has found any mention of fee shifting in the legislative history of the CJRA.  What is clear from the legislative history is that Congress intended the CJRA to grant the district courts broad power to implement innovative strategies within a six-point framework:

> Title I is built upon six essential components aimed at improving litigation management and reducing litigation costs and delays.  Briefly, those principles are:
>     (1) building reform from the "bottom up";
>     (2) promulgating a national, statutory policy in support of judicial case management;
>     (3) imposing greater controls on the discovery process;
>     (4) establishing differentiated case management systems;
>     (5) improving motions practice and reducing undue delays associated with decisions on motions; and
>     (6) expanding and enhancing the use of alternative dispute resolution.

S. REP. NO. 101-416, at 14 (1990), <u>reprinted in</u> 1990 U.S.C.C.A.N. 6803, 6817.  Relying on the legislative history of the CJRA, Mesh argues that this expansive grant of power to the district courts includes the power to experiment outside of the confines of the Federal Rules of Civil Procedure.[5]  Regardless of whether

---

[5]     The Federal Rules of Civil Procedure also contain an offer of judgment provision, and one of Ashland's alternative arguments contends that the Local Rule is in conflict with that rule.  <u>See</u> FED. R. CIV. P. 68.  We decline to address this argument, but we note that Rule 68 differs from the Local Rule in three important ways.

First, Rule 68 allows only the defendant to make an offer of

13

the CJRA allows deviation from the Federal Rules of Civil Procedure, there is no evidence that Congress intended it to authorize the creation of a substantive fee shifting provision such as the Local Rule.

Finally, because the Eastern District of Texas is the only district that has adopted a fee-shifting provision in its CJEDR plan, we can find no cases from other circuits that address this particular issue.[6]

judgment, while the Local Rule allows either party to do so. Compare id. ("At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party . . . ."), with UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, art. 6, § 9 (1997) ("At the Management Conference or any time thereafter, a party may make a written offer of judgment.").

Second, while the Local Rule requires that the final judgment be "of more benefit to the party who made the offer by 10%," UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, art. 6, § 9 (1997), Rule 68 only requires that the judgment obtained by the offeree "is not more favorable than the offer," FED. R. CIV. P. 68, before allowing the court to shift costs.

Third, and most important for this case, Rule 68 only provides for the shifting of costs, while the Local Rule allows the offeror to receive both costs and attorneys' fees. Compare FED. R. CIV. P. 68 ("If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."), with UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, art. 6, § 9 (1997) ("If the offer of judgment is not accepted and the final judgment in the case is of more benefit to the party who made the offer by 10%, then the party who rejected the offer must pay the litigation costs incurred after the offer was rejected. . . . 'Litigation costs' . . . includ[es] . . . reasonable attorneys' fees.").

[6]    Two other districts (the District of Hawaii and the Western District of Washington) are considering adopting similar fee-shifting rules, but there is no evidence that either of the provisions have actually been promulgated.  DAVID RAUMA & DONNA

14

Given this lack of explanation or discussion in the statute, its legislative history, or the case law, we must examine the entire statute to determine the context in which the catch-all provision should be understood.  See Crandon v. United States, 494 U.S. 152, 158 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); see also Pongetti, 101 F.3d at 439.

A list of several specific expense and delay reduction techniques precedes the catch-all provision in the CJRA, illustrating the types of initiatives that Congress had in mind in drafting the statute.  See 28 U.S.C. § 473(b) (1994).  These include (1) requiring the parties to present a "discovery-case management plan" at the initial pretrial conference; (2) requiring that each party send to each pretrial conference a representative who is authorized to bind that party "regarding all matters previously identified by the court for discussion at the conference;" (3) requiring both the attorney and the party to sign requests for "extensions of deadlines for completion of discovery or for postponement of the trial;" (4) creating a "neutral evaluation program for the presentation of the legal and factual basis of a case to a neutral court representative" early in the litigation; and (5) requiring that representatives of each

STIENSTRA, FEDERAL JUDICIAL CTR., THE CIVIL JUSTICE REFORM ACT EXPENSE AND DELAY REDUCTION PLANS:  A SOURCEBOOK, 309 tbl.15 at 313, 327 (1995).  In addition, the Northern District of Florida requires that the losing party in a discovery dispute pay the fees and costs of the prevailing party.  Id. at 312.

party with authority to settle "be present or available by telephone during any settlement conference." Id. § 473(b)(1)-(5) (1994).

While we agree with the Friends of the Earth court's determination that the CJRA was intended to allow the district courts to experiment, perhaps even beyond the strict confines of the Federal Rules of Civil Procedure, we think that the tenor of the CJRA's own specific provisions serves to limit the scope of the catch-all provision. Clearly, none of the other provisions described above contemplates anything resembling the drastic reallocation of rights that the Local Rule effects.

Moreover, the Supreme Court decided Alyeska before Congress passed the CJRA. Thus, at the time that the CJRA was under consideration, Congress knew that the Supreme Court was unwilling to extend fee-shifting rights without some explicit congressional authorization. We adhere to the "longstanding . . . principle that '[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.'" United States v. Texas, 507 U.S. 529, 534 (1993). Thus, "[a] party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." Green v. Bock Laundry Machine Co., 490 U.S. 504, 521 (1989). In this case, Mesh has failed to carry that burden. Had Congress intended to authorize fee shifting in the CJRA, it could have done so (but cf. supra

16

note 4), but absent any mention of such a provision in the statute itself or in the legislative history, we must assume that Congress did not intend to allow individual districts to make so substantial a change. We therefore find that the CJRA did not grant district courts the discretion to use fee shifting as a cost and delay reduction technique in the manner contemplated by the Local Rule.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court awarding Mesh $53,465.60 in legal fees and expenses.