United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 6, 2004**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
for the Fifth Circuit

————————

m 03-20048

————————

GARY M. OLANDER,

Plaintiff-Counter Defendant-
Appellee-Cross-Appellant,

WHITNEY NATIONAL BANK,

Intervenor Plaintiff-Appellee-
Cross-Appellant,

VERSUS

COMPASS BANK; COMPASS BANCSHARES, INC.,

Defendants-Counter Claimants-
Appellants-Cross-Appellees.

————————————

Appeals from the United States District Court
for the Southern District of Texas

————————————

Before HIGGINBOTHAM, SMITH,
AND WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

All parties appeal the disposition of a suit

involving six stock option agreements. The district court held that Gary Olander owed Compass Bank ("Compass") the profits received under two of the agreements. On appeal, Compass argues that it should have received *all* the profits. On cross-appeal, Olander and Whitney Bank ("Whitney") contend that Olander owed Compass *none* of the profits.[1] Agreeing with Compass, we affirm in part, reverse in part, and remand.

## I.

Olander worked for Compass from 1988 until his resignation in June 2001, at which time he was an Executive Vice President in the real estate lending department.[2] Beginning in 1990, he participated in a stock option program that took the form of separate, annual agreements, each providing him with the right to purchase a certain number of common shares of Compass stock at a set price. The option would remain in effect for ten years after signing the agreement but would cease immediately[3] if Compass terminated Olander for any reason.

Beginning in 1994, the agreements contained a non-competition clause ("non-compete") that limited the employee's ability to associate with interests perceived to be adverse to Compass. In addition to requiring the employee to "devote his or her entire time, energy and skills to the service of the Company" during the period of employment, the non-compete imposes restrictions for two years after termination of employment.[4] The non-compete allows Compass to obtain an injunction in the event of an actual or threatened breach. The agreement also contains a remarkable provision,[5] section 8(e):

> Employee specifically recognizes and affirms that [the aforementioned covenants are] material and important term[s] of this Agreement[,] and Employee further agrees that should all or any part or application of subdivisions (b) or (c) of Section 8 of this Agreement be held or found invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction in an action between Employee and the Company, [Compass] shall be entitled to receive . . . from Employee all Common Stock held by Employee . . . . If Employee has sold, transferred, or otherwise disposed of Common Stock obtained under this Agreement[, Compass] shall be entitled to receive from Employee the difference between the Option Price paid by Employee and the fair market value of the Common Stock . . . on the date of sale, transfer, or other disposition.

Thus, Compass made the enforceability of the non-competes a precondition for the stock op-

---

[1] Whitney and Olander also seek attorney's fees.

[2] Olander served as an at-will employee.

[3] If the termination occurred in connection with a sale of the company or pursuant to a retirement, the employee would have three months to exercise his rights.

[4] Such restrictions barred an employee from soliciting existing customers of Compass, enticing Compass employees to leave their jobs, and divulging trade secrets, customer lists, or other confidential information. The 2000 agreement purported to eliminate an earlier provision that restricted an employee's ability to work for a Compass competitor.

[5] Compass calls section 8(e) a "restoration provision," but Olander refers to it as a "clawback provision."

tion to remain in effect. If a court held section 8 to be invalid, the employee would return the shares of stock or the profits arising from the stock's sale.

In 2000, Compass amended the non-compete to eliminate a provision that barred an employee from working for a competitor of Compass for two years after the end of employment. The 2000 agreement "supersede[d]" all prior non-compete provisions.[6]

Olander grew dissatisfied with his job and, in June 2001, resigned to start work with Whitney, a direct competitor. Before leaving Compass, Olander exercised his right to stock options under the 1994, 1995, 1996, 1997, 2000, and 2001 agreements, then immediately filed a declaratory judgment action in state court to have the non-competes from 2000 and 2001 declared unenforceable. Compass removed to federal court in July 2001, based on diversity jurisdiction, and moved for a preliminary injunction. Whitney intervened as a plaintiff and filed its own declaratory judgment complaint.

The district court denied a preliminary injunction. *Olander v. Compass Bank*, 172 F. Supp. 2d 846 (S.D. Tex. 2001). As part of its ruling, the court found that the non-compete provisions were unenforceable[7] and that, as a

consequence, Compass had little chance of succeeding on the merits. *Id*. at 855. This court upheld the denial of an injunction. *Olander v. Compass Bank*, No. 01-21151 (5th Cir. June 3, 2002) (unpublished).[8]

Compass then filed claims against Olander for breach of all six non-competes, for reimbursement under section 8(e) of the 2000-01 agreements, and for recovery under equitable theories. Compass also filed a claim against Whitney for tortious interference with employment. Olander and Whitney moved for summary judgment on the matter of the non-competes' unenforceability.[9]

---

[7](...continued)
three conclusions: (1) the confidentiality portions of the non-compete did not represent an "otherwise enforceable agreement," because Compass did not provide Olander with any confidential information at the time the agreement was signed; (2) the stock options did not "give rise to" Compass's interest in restraining Olander's future behavior; and (3) there was no evidence that Olander breached the non-disclosure provisions. *Olander*, 172 F. Supp. 2d at 854-56.

[8] The panel discussed the requirements of a valid non-compete under Texas law by looking to *Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994), and held that the Compass non-compete was not "ancillary to or part of an otherwise enforceable contract." *Olander v. Compass Bank*, No. 01-21151, slip. op. at 5. It also ruled that the district court did not clearly err in holding that "Compass did not promise to provide confidential information in the stock option agreement." *Id*.

[9] Olander and Whitney may have realized that section 8(e) would effectively nullify the effect of a victory, because Olander would have to return profits earned under the agreement. In their reply, the two asked the district court not to label the
(continued...)

---

[6] The "supersede" language appears in section 8(g) of the 2000 Stock Option Agreement: "This Section 8 supercedes [sic] any provision governing the Employee's ability to compete with, or solicit personnel from, the Corporation and Compass contained in any stock option agreement between the Corporation and the Employee entered into as of a date prior to the date of this Agreement."

[7] The district court's determination arose from
(continued...)

3

The district court granted summary judgment on three matters, holding (1) that the 2000 and 2001 non-competes were unenforceable; (2) that Olander did not breach the non-solicitation provision of the 2000 agreement and did not breach the 2000-01 confidentiality agreements; and (3) that Whitney did not tortiously interfere with Olander's employment with Compass. The court also denied, without prejudice, Olander's and Whitney's motions for attorney's fees.

A bench trial on the remaining issues followed. Compass demanded a return of profits per section 8(e) of the 2000-01 agreements and asserted that, because the 2000 agreement incorporated section 8(e) into the 1994-97 agreements through the "superseding" language of section 8(g), Olander owed Compass the profits from the earlier stock option plan. Both sides sought attorney's fees.

The district court held that Olander owed Compass the profits gained through the 2000 and 2001 agreements.[10] It decided, however, that the word "supersede" in section 8(g) voided rather than replaced the non-competes from 1994-97. Consequently, it denied relief to Compass on the 1994-97 agreements. It awarded, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2004), partial attorney's fees to Compass. Finally, the court determined that the Texas Declaratory Judgment Act,[11] on which Olander and Whitney

___

[9](...continued)
2000 non-compete as unenforceable but instead to find that Olander did not violate its terms.

[10] The court held that such profits totaled $57,672.03.

[11] TEX. CIV. PRAC. & REM. CODE ANN.
(continued...)

relied for attorney's fees, did not provide a basis on which it could award fees.

## II.

### A.

We review a summary judgment *de novo*. *Frank v. Xerox Corp.*, 347 F.3d 130, 135 (5th Cir. 2003). Following a bench trial, we review findings of fact for clear error and conclusions of law *de novo*. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000).

### B.

The district court did not err in holding unenforceable the non-compete language from the 2000 and 2001 agreements. As we have said, the district court, in determining whether Compass's non-competes met public policy requirements, looked to the Texas Supreme Court's interpretation of the Covenants not to Compete Act.[12] *See Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994). In *Light*, the court highlighted two requirements that a non-compete must satisfy before a court will enforce it: The agreement must "be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made [, and must] contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable . . . ." *Id*. at 644. We focus on the first requirement.

The district court considered the facts and language of *Light* and correctly determined that the 2000 and 2001 non-competes were not "ancillary to or part of an otherwise en-

___

[11](...continued)
§ 37.009 (Vernon 2004).

[12] TEX. BUS. & COM. CODE ANN. § 15.50 (Vernon 2004).

forceable agreement as required by Texas law."[13]  As mentioned in *Light* and in the district court's decisions, Texas law, has been interpreted by its courts to limit restraints on trade.  TEX. BUS. & COM. CODE ANN. § 15.05(a) ("Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.").  Section 15.50 of the Texas Business and Commerce Code establishes the requirements for a valid non-compete, and *Light* has applied those requirements.

A non-compete cannot, on its own, form the consideration for an agreement.  Instead, the non-compete must be connectedSSmust be ancillary toSSan already valid agreement.  In making this determination, a court must make two inquiries: "(1) [I]s there an otherwise enforceable agreement, to which (2) the covenant not to compete is ancillary to or a part of

_____

[13] Interestingly, neither party challenges, as a primary ground for appeal, the summary judgment ruling on the 2000 and 2001 agreements.  Instead, the litigants attack the unenforceability rulings only as secondary arguments.  Because a ruling on the 2000 language directly affects the panel's determination on the 1994-97 agreements, we consider the general enforceability of the non-compete.

Olander first asserts that the 1994-97 agreements are void and do not trigger, in any fashion, section 8(e).  Alternatively, he claims that the district court erred in its construction of the 2000 language, that the non-competes are valid, and that he did not breach any of the non-competes.

Compass, predictably, argues that all the non-competes are unenforceable and that it should receive all the profits received under all of the agreements.  Alternatively, it asserts that the district court erred in its construction of the 2000 language, that the non-competes are valid, and that Olander breached the provisions.

at the time the agreement is made." *Light*, 883 S.W.2d at 644.

The parties cannot make illusory promises to satisfy the requirement of an "otherwise enforceable agreement."  In an at-will context, "[c]onsideration for a promise, by either the employee or the employer[,] cannot be dependent on a period of continued employment.  Such a promise would be illusory, because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance." *Id.* at 644-45.  The presence of an illusory promise does not destroy the possibility of a contract.  Instead, it may create a unilateral contract, and "the promisor who made the illusory promise can accept [it] by performance." *Id*. at 645 n.6.

Compass's stock option agreement contains only illusory promises on the part of the employer and renders the non-compete unenforceable.  As an at-will employer, Compass could terminate Olander for "good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).  At the time of termination, the rights under the stock option agreement would disappear.  Compass claims, as an alternative argument, that "Olander's promise not to disclose confidential information . . . was an offer to Compass to enter into a unilateral agreement . . . .  Compass accepted that offer when it provided Olander with confidential information . . . ."

Nothing in the record suggests that Compass provided Olander with confidential information immediately on signing any of his stock options.  Additionally, the non-disclosure provisions do not contain express promises on the part of Compass to provide any information to Olander.  Instead, *only Olander* prom-

5

ises not to disclose or make use of "any trade secrets, customer lists, information regarding customers, or other confidential information."

Furthermore, the district court noted that Compass only produced evidence that Olander could *access* confidential information. The court expressly held that Compass failed to produce ample evidence of Olander's misuse of such information. The court also did not mention whether Compass proved that Olander actually received any information.[14] Thus, Compass failed to produce evidence that it accepted a unilateral agreement. That agreement does not constitute an otherwise enforceable agreement under *Light*,[15] because it was not

valid at the time of the promise.

In the absence of a unilateral promise, the continued existence of the stock option agreement depends entirely on Olander's remaining an employee of Compass, a relationship that Compass, acting alone, could terminate at any time. Because this is the essence of an illusory promise, the district court did not err in holding that, under Texas law, it could not enforce the non-competes.

### C.

After holding that it could not enforce the non-competes from 2000 and 2001, the district court applied section 8(e) and ordered the return of the profits earned from the two agreements. During the bench trial, Compass argued that, through section 8(g), the parties incorporated into the 1994-97 agreements the same language that the district court declared unenforceable.[16] Consequently, Compass demanded, *via* section 8(e), the profits earned under those agreements.

Compass's claim turns on the meaning of "supersede." Section 8(g) states that "[t]his

---

[14] "After months of discovery, Compass has not identified a single specific instance in which Olander allegedly used or disclosed a specific piece or type of confidential information."

[15] Compass also asserts, as an alternative argument, that *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003), requires us to find an otherwise enforceable agreement in the stock option agreements and to give force to the non-compete. *Guy Carpenter* is distinguishable on two fronts.

First, the *Guy Carpenter* panel held that a separate and enforceable agreement existed, because the parties agreed to a severance package in the event of an improper termination. *Id.* at 465. Olander's agreement contained no such separate agreement. Secondly, in *Guy Carpenter* the employer explicitly promised to provide confidential information to the employee. *Id.* at 466 ("[Employer's] promise to provide confidential information gives rise to its interest in restraining [the employee] from competing"). As we have mentioned, Compass's contract contained no explicit promise or acknowledgment that it would provide any confidential information to Olander.

(continued...)

[15](...continued)
As a further alternative argument, Compass asks that we certify the question of unilateral contracts to the Texas Supreme Court. Such certification, however, "is not a proper avenue to change our binding precedent." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425 (5th Cir. 2001) (internal quotations and citations omitted). *Light* controls in this case.

[16] By using the word "supersede," Olander and Compass altered their prior agreements with an eye toward affecting their future use. That is, the alterations to the 1994-97 agreements would matter only if and when Olander exercised his stock options.

6

Section 8 supercedes [sic] any provision governing the Employee's ability to compete with, or solicit personnel from [Compass] contained in any stock option agreement . . . entered into as of a date prior to the date of this Agreement." Because the district court used the language referenced in section 8(e) to hold the 2000-01 non-competes unenforceable, that language's incorporation into a prior stock option agreement would similarly render unenforceable that agreement's non-compete.

The district court, however, erred in its application of "supersede." As the court noted, supersede means "[t]o annul, make void, or repeal by taking the place of." BLACK'S LAW DICTIONARY 1452 (7th ed. 1999). Criminal courts follow such a meaning with respect to superseding indictments, and civil courts often have examples of contracts that supersede previous agreements.[17]

Thus, "supersede" carries two elements: (1) an invalidation of a prior entity; and (2) the replacement of that entity with another. The 2000 agreement invalidated the non-compete clauses from the 1994-97 stock option agreements and replaced them with the 2000 language. Such an amendment became relevant when Olander cashed in his stock options.

Interestingly, the district court applied only the first half of the definition of "supersede": "Olander and Compass did not agree to incorporate the non-compete provisions of the 2000

Agreement into the prior agreements. Instead, the parties *chose to void the prior versions . . .*" (emphasis added). *Something*, however, must take the place of the superseded words.

Instead of replacing the previous language, the district court eliminated it entirely. Such a holding runs contrary to the language of the 2000 agreement. Consequently, the district court erred in its application of "supersede." The court correctly held that the 2000-01 language was unenforceable and that such unenforceability triggered section 8(e)'s restoration provision, so Olander owes the profits arising from the 1994-97 agreements.[18]

III.

As part of their cross-appeal, Olander and Whitney assert that the district court erred by not awarding them attorney's fees. Because no party has argued against the partial fee award for Compass, we need only to consider the denials with respect to Olander and Whitney.[19] The denial of attorney's fees is reviewed for abuse of discretion. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461-62 (5th Cir. 2002). In diversity cases, state law governs the award of fees. *See, e.g., McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1487 (5th Cir. 1990).

In seeking attorney's fees, the parties relied

---

[17] *See, e.g., Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 246 F. Supp. 2d 632, 639 (S.D. Tex. 2003) ("It is well established that a modified contract prevails over the old contract and supercedes [sic] the earlier contract to the extent of any inconsistencies.").

[18] Compass argues, as another alternative, that the district court erred in not awarding it Olander's profits under equitable theories. Because the district court erred in its construction of "supersede," and because that error provides ample reason to order a return of all profits to Compass, we do not address this ground.

[19] *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (stating the general rule that failure to raise an issue on appeal waives it).

on two statutes. Compass sought fees pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 *et seq.* (Vernon 2004).[20] Olander and Whitney requested fees under the Texas Declaratory Judgment Act,[21] which empowers a court to "award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2004).

Although Olander and Whitney successfullySSbut phyrriclySSrendered the non-competes unenforceable, this court's precedent forecloses an award under this statute in a diversity case. *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[W]e now hold, that a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law.").[22] Thus,

because Whitney and Olander sought attorney's fees through an inapplicable statute, the district court did not err in denying fees.

### IV.

The district court correctly held Compass's non-compete unenforceable and correctly ordered the return of the profits received under it. The court erred, however, in its interpretation of "supersede" and in its refusal to apply to the 1994-97 agreements the unenforceability ruling regarding the 2000-01 agreements. Olander owes Compass $224,908, the amount earned under all six stock option agreements.[23] We render judgment in Compass's favor for that amount.[24] Finally, the court did not err in denying attorney's fees to Olander and Whitney.

Consequently, we AFFIRM in part, REVERSE in part, and REMAND with instruction to enter judgment in favor of Compass for $224,908 and to address pre- and post-judgment interest and any other ancillary matters, all in accordance with this opinion.

---

[20] Section 38.001 contains the rather broad statement that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs . . . ." Subsequent sections condition such a grant on certain actions by the requesting party.

[21] Olander also asserts that he should receive fees under the Texas Covenant Not To Compete Act, TEX. BUS. & COM. CODE ANN. § 15.51(c) (Vernon 2004). The district court, however, did not suggest that Olander properly pleaded anything related to § 15.51(c), and Olander does not argue that he previously pleaded this matter. Consequently, Olander did not properly raise the issue before the district court and cannot do so here. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

[22] *See also Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 772 n.13 (5th Cir. 1999) (stating that *Utica Lloyd's* "is not a departure from the prior law of this Circuit, but is instead a logical application of previously stated (continued...)

[22](...continued)
principles.").

[23] Olander testified that he profited $224,908 by exercising his six stock options.

[24] The district court apparently erred in its original calculation of damages for the 2000 and 2001 agreements. We remedy any such defect by ordering a return of all profits received under all six agreements.