United States Court of Appeals
Fifth Circuit

**F I L E D**

March 30, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-50711
_____

SOILA CAMACHO, SONIA DENISE GROVER,
TEXAS WELFARE REFORM ORGANIZATION,
EL PASO COUNTY HOSPITAL
d/b/a R.E. THOMASON GENERAL HOSPITAL,

                                    Plaintiffs - Appellants,

     v.

TEXAS WORKFORCE COMMISSION,
TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
and TEXAS DEPARTMENT OF HUMAN SERVICES,

                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before: KING, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

After successfully challenging rules adopted by the Texas Workforce Commission and successfully defending that judgment before this Court, Appellants sought attorney's fees. The district court denied their application. The parties are now before us again, but this time the sole issue on appeal is whether the district court erred under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), by refusing to apply the fee-award provision of the Texas Declaratory Judgment Act. We affirm, finding

Appellants' claim foreclosed by precedent directly on point: *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208 (5th Cir. 1998).

## I.   BACKGROUND

The Appellants, Soila Camacho, Sonia Denise Grover, Texas Welfare Reform Organization, and El Paso County Hospital District sued the Appellees, Texas Workforce Commission, Texas Health and Human Services Commission, and Texas Department of Human Services in state court.   Appellants challenged rules adopted in 2003 by the Texas Workforce Commission which limited eligibility for Medicaid health coverage.   They sought relief under the Texas Declaratory Judgment Act ("DJA").   Appellees removed to federal court, asserting federal question jurisdiction.   The district court invalidated the rules at issue, holding that they were contrary to the plain meaning of the Medicaid statute.   We affirmed.   *See Comacho v. Texas Workforce Comm'n*, 408 F.3d 229 (5th Cir. 2005).

Appellants then filed an application for attorney's fees in the district court.   They specified the fee award provision of the DJA as the statute entitling them to the award.   *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (Vernon 1997).   Section 37.009 provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."   The district court denied the application, citing Fifth

2

Circuit precedent holding that the DJA is a procedural statute that does not apply in federal court.  This appeal followed.

## II.  STANDARD OF REVIEW

We review a denial of attorney's fees for abuse of discretion.  *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 656 (5th Cir. 2004).  Underlying questions of law, like the *Erie* question presented here, are reviewed *de novo*.  *Id.*

## III.  DISCUSSION

A.  *Utica Lloyd's of Texas v. Mitchell*

Under *Erie*, federal courts apply state substantive law "to any issue or claim which has its source in state law."  C. WRIGHT, A. MILLER, & E. COOPER, 19 FEDERAL PRACTICE AND PROCEDURE (2d ed. 2002) § 4520.  Yet, federal law, rather than state law, invariably governs procedural matters in federal courts.  *E.g.*, *Motorola Communic's & Elec., Inc. v. Dale*, 665 F.2d 771, 774 (5th Cir. 1982).  In *Utica*, this Court squarely held that the DJA is procedural for *Erie* purposes: "a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law."  138 F.3d at 210.[1]

---

[1] *Utica* is not distinguishable on the ground that this case arrived in federal court via federal question, rather than diversity, jurisdiction.  The statement in *Utica* that the DJA does not apply in "a diversity case" likely reflects the frequently assumed, but erroneous, proposition that *Erie* applies only in diversity cases.  "The *Erie* case and the Supreme Court decisions following it apply in federal question cases as well." WRIGHT, MILLER & COOPER, *supra*, page 3, § 4520.

3

Two panels of this Court subsequent to *Utica* reached the opposite result and applied the DJA in federal court. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000); *In re Garza,* 2004 WL 249596, *4 (5th Cir. Feb. 10, 2004) (unpublished). Neither of these decisions affects the precedential value of *Utica* because the earliest of conflicting panel decisions controls. *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 549 (5th Cir. 1997). Two other post-*Utica* panels have reaffirmed the viability of *Utica* and held that this Court's precedent forecloses the use of the DJA in federal court. *See Olander v. Compass Bank*, 363 F.3d 560, 567–68 (5th Cir. 2004); *Van v. Anderson*, 66 Fed. Appx. 524 (5th Cir. Apr. 14, 2003) (unpublished).

B.   *UTICA* AND *OLANDER* ARE NOT DISTINGUISHABLE

Appellants maintain that *Utica* and *Olander* can be distinguished. They point out that the instant case involves a challenge brought against state agencies, whereas *Utica* and *Olander* were disputes between private parties. They contend that this distinction is important because Texas has decided to waive its sovereign immunity to allow private parties to recover attorney's fees against the state in declaratory judgment actions. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). Because a state's waiver of sovereign immunity is a

4

fundamental policy decision, they argue, state agencies should be susceptible to awards of attorney's fees under the DJA in federal court.

Appellants' effort to distinguish *Utica* and *Olander* is not persuasive. The intention of a state in waiving sovereign immunity is that the state "be treated in the same manner as any private litigant." *Driskill v. State*, 787 S.W.2d 369, 370-71 (Tex. 1990); *see also United States v. Orleans*, 425 U.S. 807, 814 (1976) ("The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable *to the same extent as a private party* for certain torts.") (emphasis added). A government that has waived sovereign immunity is entitled to "assert the same defenses available to private citizens." *Starnes v. United States*, 139 F.3d 540, 542 (5th Cir. 1995). Refusing to extend *Utica* and *Olander* to Texas agencies would treat the state differently than private litigants, who, under those precedents, are not subject to attorney's fees awards. Accordingly, applying *Utica* and *Olander* to cases involving the state is perfectly consistent with Texas's waiver of sovereign immunity.

Appellants argue that the Supreme Court's recent decision in *Lapides v. Board of Regents* requires us to carve out an exception to *Utica*. 535 U.S. 613 (2002). We disagree. *Lapides* held that

5

a state waives its sovereign immunity when it removes a case from state court to federal court. The Supreme Court noted that it would "seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Id.* at 619. There is no comparable anomaly in the instant case. Appellees did invoke federal jurisdiction by removing the case to federal court, but they did not simultaneously deny the same. Indeed, Appellees do not argue any form of sovereign immunity defense. Furthermore, contrary to Appellants' claim, Appellees have not effectively "regained" their sovereign immunity by removing to federal court. Appellees were treated exactly like private parties in federal court. In short, this case falls squarely within the holdings of *Utica* and *Olander*, and the Supreme Court's *Lapides* decision is inapposite.

C. *UTICA* DOES NOT CONFLICT WITH PRIOR PRECEDENT

Appellants also argue that *Utica* is not binding because it conflicts with prior precedent. Appellants contend that *Utica* failed to conduct a proper *Erie* analysis, as required by this Court's prior opinions. "Whether a particular provision is substantive or procedural for *Erie* purposes is determined by

6

looking to the 'twin aims' of the *Erie* doctrine: the discouragement of forum shopping and the avoidance of inequitable administration of the laws." *Herbert v. Wal-Mart Stores*, 911 F.2d 1044, 1047 (5th Cir. 1990). Because *Utica* made no such analysis, Appellants argue, "it is of no effect."

Published panel opinions are ordinarily binding on subsequent panels. Completely disregarding decisions under the "conflict exception" is a disfavored practice that is to be avoided if possible. *See United States v. Alvarado-Santilano*, 434 F.3d 794, 798 (5th Cir. 2005). If Appellants' argument were to succeed, it would represent a serious erosion of the principle of precedent and a dramatic expansion of the conflict exception. Appellants argue that *Utica* is inconsistent with general *Erie* principles and that *Utica*'s "analysis" was wrong. They do not, however, point to any case that contradicts *Utica*'s specific holding that the DJA is procedural. Disregarding precedent where it arguably conflicted with general principles or employed flawed analysis would invite parties to re-argue the merits of every prior panel decision. This is because to ask whether a prior decision's analysis was correct is essentially to ask whether it was rightly decided. Thus, we reject Appellants' effort to undermine the precedential effect of *Utica* by referencing broad principles of *Erie* analysis.

7

Appellants also argue that *Utica* conflicts more specifically with this Court's earlier decision in *Ashland Chemical Inc. v. Barco Inc.*, 123 F.3d 261 (1997). Appellants contend that *Ashland* held that refusing to apply fee-shifting statutes in federal court would result in forum shopping and that such statutes are substantive for *Erie* purposes. Appellants misread *Ashland*. First, *Ashland* recognized, as has the Supreme Court, that not all state attorney's fees laws are applicable in federal court under *Erie*. *Id.* at 265. Second, *Ashland* did not state, much less hold, that all fee-shifting rules implicate the problem of forum shopping. Rather, it expressed this concern only about the specific attorney's fees law at issue in that case. *Id.* at 265 n.3 ("The Local Rule . . . implicates the *Erie* problem of forum shopping."). The Supreme Court has taken a nuanced approach in determining whether particular attorney's fees laws are procedural or substantive under *Erie*. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Accordingly, the statement in *Ashland*, regarding a law not at issue here, does not undermine *Utica*. In sum, *Utica* is binding because Appellants have not identified a prior decision that conflicts with its specific holding that the DJA is procedural for *Erie* purposes.

D.   *UTICA*'S HOLDING FOLLOWS FROM GENERAL *ERIE* PRINCIPLES

We need not go further to affirm the judgment of the district court.  *Utica* is good law and is not distinguishable from the case at bar.  Nevertheless, since Appellants mount such a vigorous attack on the reasoning of *Utica*, we find it prudent to explain why we believe *Utica*'s holding comports with general *Erie* principles.

Appellants argue that a correct *Erie* analysis[2] compels the conclusion that the DJA applies in federal court.  They contend that (1) no federal statute, rule, or policy conflicts with the DJA and (2) failing to apply the DJA in federal court would promote forum shopping and cause the inequitable administration of the laws.  *See Hanna v. Plummer*, 380 U.S. 460, 465–68 (1965). These arguments fail.

The DJA does conflict with a federal policy: the "American Rule" that "parties are ordinarily required to bear their own attorney's fees."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Human Res.*, 532 U.S. 598, 602 (2001).  In light of the American Rule, generally applied in federal court, we have been instructed that state law does not always control the issue

---

[2] We agree with Appellants that, when courts divide substance from procedure under *Erie*, they should not ordinarily rest on state court opinions characterizing statutes as "procedural" or "substantive" in cases unrelated to the *Erie* doctrine.  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09 (1945).

of attorney's fees. *See Chambers*, 501 U.S. at 51–52. Rather, we are to apply state attorney's fee law only when it "embod[ies] a substantive policy." *Id.* at 52.

The DJA does not represent "substantive policy" under *Chambers*. The Supreme Court explained in *Chambers* that substantive fee-shifting statutes include those "which permit[] a prevailing party in certain classes of litigation to recover fees." *Id.* Thus, laws requiring fee awards for prevailing parties in actions to enforce an insurance policy are substantive for *Erie* purposes. *Id.* By contrast, laws providing for fees due to an opponent's bad-faith litigation tactics are procedural. *Id.* at 53. In reaching this conclusion, the Supreme Court emphasized that bad-faith fee awards were "not tied to the outcome of litigation." *Id.*

Fifth Circuit decisions following *Chambers* recognize that only fee-shifting statutes limiting fee awards to prevailing parties are substantive for *Erie* purposes. In *Ashland*, this Court held that the fee-shifting rule at issue there was substantive because "unlike the imposition of bad-faith sanctions in *Chambers*, [the award was] tied to the outcome of the case." 123 F.3d at 265. Similarly, in *Exxon Corp. v. Burglin*, we distinguished fee-shifting statutes "that hinge an award on success in the underlying lawsuit" from those that do not. 42

10

F.3d 948, 951 (5th Cir. 1995). "This difference tracks the blurry line between substance and procedure in *Erie* and the Rules Enabling Act." *Id.* at 952.

The "tied to the outcome" test suggested by the Supreme Court in *Chambers* reflects the more general policy concerns expressed in *Hanna*. Where an award of attorney's fees is discretionary and does not depend on the outcome of the case, it is difficult for a party to predict whether the law will result in an additional benefit or an additional liability. We do not believe that parties would select their forum based upon the availability of such a law. Nor does refusing to enforce such a law in federal court result in the inequitable administration of the laws. *See Chambers*, 501 U.S. at 53.

Turning back to the statute at issue here, the DJA does not tie fee awards to the outcome of litigation. The Texas Supreme Court has held that fee awards under the DJA do not depend upon a finding that a party "substantially prevailed." *Barsho v. Medina County Underground Water Conserv. Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). Rather, the DJA provides the trial court "a measure of discretion" to decide when awarding fees is "equitable and just." *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (1998). In its discretion, a trial court may "grant attorney's fees to the nonprevailing party." *Cartwright v. Cologne Production*, __ S.W.

11

3d __, 2006 WL 22681, *6 (Tex. App.—Corpus Christi Jan. 5, 2006, no pet.); *see generally* 16 TEX. JUR. § 66 (2006) (collecting cases holding that "attorney fees [under the DJA] are discretionary and can be awarded to either party, even a non-prevailing party").

At oral argument, Appellants contended that no Texas court has ever affirmed fees awarded to a nonprevailing party. Given the clear language in the cases cited above, we doubt the relevancy of this contention. In any event, it is incorrect. *See Maris v. McCraw*, 902 S.W.2d 191 (Tex. App.—Eastland, 1995, writ denied); *McLendon v. McLendon*, 862 S.W.2d 662 (Tex. App.—Dallas, 1993, writ denied) (affirming an award of more than $1 million in attorney's fees to the plaintiffs even though "[t]he trial court denied the declaratory relief sought"); *Blue Cross Blue Shield of Texas v. Duenez*, 2005 WL 1244609 (Tex. App.—Corpus Christi, May 26, 2005, pet. filed) (mem. op.).[3] Based on the foregoing reasons, we conclude that the DJA is procedural for *Erie* purposes under *Chambers* and its Fifth Circuit progeny.

---

[3] Appellants cite a single case from an intermediate Texas court of appeals which suggests that only "the prevailing party" may be "entitled" to attorney's fees under the DJA. *Anderson Mill Util. Dist. v. Robbins*, __ S.W.3d __, 2005 WL 2170355, *6 (Tex. App.—Austin, Sep. 8, 2005, no pet.). As shown above, this is contrary to the weight of Texas authority and, more importantly, to rulings of the Texas Supreme Court.

## IV. CONCLUSION

We have considered Appellants' efforts to escape the rule of *Utica Lloyd's of Texas v. Mitchell* and found them inadequate. Accordingly, the district court's judgment denying attorney's fees is AFFIRMED.