

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2003

# Delvoye v. Lee

Precedential or Non-Precedential: Precedential

Docket 02-3943

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Delvoye v. Lee" (2003). *2003 Decisions.* Paper 504.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/504

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 20, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-3943

———————

WIM DELVOYE, in the Matter of
Sebastian Delvoye, an infant under the age of one,
Appellant,

v.

CHRISTINA LEE

———————

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Civ. No. 02-cv-00769)
District Court Judge: Faith S. Hochberg

———————

Argued: February 13, 2003

Before: ALITO and McKEE, *Circuit Judges*, and
SCHWARZER,* Senior District Judge

(Filed: May 20, 2003)

———————

———————

* Honorable William W Schwarzer, Senior United States District for the Northern District of California, sitting by designation.

DEAN G. YUZEK (ARGUED)
JOAN WALTER
Ingram Yuzek Gainen Carroll &
 Bertolotti, LLP
250 Park Avenue
New York, NY 10177

BERNARD G. POST
950 Third Avenue
New York, NY 10022

*Attorneys for Wim Delvoye, in the
Matter of Sebastian Delvoye, an
infant under the age of one,
Petitioner-Appellant*

ROBERT W. AVERY (ARGUED)
Avery & Avery
559 Bergen Boulevard
Ridgefield, NJ 07657

SUSAN M. LEE
32 Sylvan Avenue
Englewood Cliffs, NJ 07632

*Attorneys for Christina Lee,
Respondent-Appellee*

## OPINION OF THE COURT

SCHWARZER, *Senior District Judge.*

This is an appeal from an order of the district court denying Wim Delvoye's petition to return Baby S to Belgium under the *Hague Convention on the Civil Aspects of International Child Abduction*, Oct. 25, 1980; T.I.A.S. No. 11670, 19 I.L.M. 1501 (the "Convention").[1] The district court found and concluded that petitioner had failed to meet his burden of proving that Baby S was an habitual resident of Belgium and thus was wrongfully removed from that country. We affirm.

---

1. The Convention is implemented at 42 U.S.C. § 11603 (2003).

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and respondent met in New York early in 2000. Petitioner resided in Belgium but made several trips to visit respondent. On his visits to New York, a romantic relationship developed between them. In August 2000, respondent moved into petitioner's New York apartment. While continuing to live in Belgium, petitioner spent about a quarter of his time in New York. In September 2000, respondent learned that she was pregnant with petitioner's child. Respondent began prenatal care in New York, but because petitioner refused to pay the cost of delivery of the baby in the United States and Belgium offered free medical services, respondent agreed to have the baby in Belgium. In November 2000, she traveled to Belgium on a three-month tourist visa, bringing along only one or two suitcases. She left the rest of her belongings, including her non-maternity clothes, in the New York apartment. While in Belgium respondent lived out of her suitcases. When her visa expired she did not extend it. The baby was born on May 14, 2001. By then the relationship between the parties had deteriorated. After initially resisting, petitioner signed the consent form that enabled respondent to get an American passport for Baby S and agreed to respondent's return to the United States with Baby S in July 2001. Over the next two months, petitioner made several trips to the United States and the parties made several attempts to reconcile. When those efforts failed, petitioner filed this petition. Following an evidentiary hearing, the district court denied the petition. This appeal followed. Because the order is a final disposition of the petition, we have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Article 3 of the Convention provides in relevant part:

> The removal . . . of a child is to be considered wrongful where — a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was *habitually resident* immediately before the removal. . . .

(Emphasis added.)

The determination of a person's habitual residence is a mixed question of fact and law. We review the district court's findings of historical and narrative facts for clear error, but exercise plenary review over the court's application of legal precepts to the facts. *Feder v. Evans-Feder*, 63 F.3d 217, 222 n.9 (3d Cir. 1995); *see also Mozes v. Mozes*, 239 F.3d 1067, 1073 (9th Cir. 2001).

The issue before us is whether Baby S was "habitually resident" in Belgium at the time of his removal to the United States. In *Feder*, we defined the relevant concept:

> [A] child's habitual residence is the place where he . . . has been physically present for an amount of time sufficient for acclimatization and which has a "degree of settled purpose" from the child's perspective. . . . [A] determination of whether any particular place satisfies this standard must focus on the child and consists of an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there.

63 F.3d at 224. The district court held that petitioner had failed to meet his burden of proving that Baby S was an habitual resident of Belgium. It reasoned that a two-month-old infant, who is still nursing, has not been present long enough to have an acclimatization apart from his parents.

This case then presents the unique question of whether and when a very young infant acquires an habitual residence. It differs from the run of decisions under the Convention where the child is assumed to have an habitual residence initially and the controversy is over a change of that residence. No decisions have squarely addressed the issue before us. The leading treatise on the Convention provides some general guidance:

> There is general agreement on a theoretical level that because of the factual basis of the concept there is no place for habitual residence of dependence. However, in practice it is often not possible to make a distinction between the habitual residence of a child and that of its custodian. Where a child is very young it would, under ordinary circumstances, be very difficult for him

> . . . to have the capability or intention to acquire a separate habitual residence.

Paul Beaumont & Peter McEleavy, *The Hague Convention on International Child Abduction* 91(1999). An English court has said: "The habitual residence of the child is where it last had a settled home which was in essence where the matrimonial home was." *Dickson v. Dickson*, 1990 SCLR 692. And an Australian court has stated: "A young child cannot acquire habitual residence in isolation from those who care for him. While 'A' lived with both parents, he shared their common habitual residence or lack of it." *Re F* (1991) 1 F.L.R. 548, 551.[2]

Where a matrimonial home exists, i.e., where both parents share a settled intent to reside, determining the habitual residence of an infant presents no particular problem, it simply calls for application of the analysis under the Convention with which courts have become familiar. Where the parents' relationship has broken down, however, as in this case, the character of the problem changes. Of course, the mere fact that conflict has developed between the parents does not *ipso facto* disestablish a child's habitual residence, once it has come into existence. But where the conflict is contemporaneous with the birth of the child, no habitual residence may ever come into existence.

That is not to say that the infant's habitual residence automatically becomes that of his mother. In *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374 (8th Cir. 1995), Nunez-Escudero and Tice-Menley married in Mexico in August 1992. A child was born there in July 1993. In September, Tice-Menley left Mexico with her two-month-old infant and returned to the United States. Nunez-Escudero

---

2. These cases assume that the parents had joint custody. This is true under Belgian law regardless of whether the parents are married. *See* H. Bocken and W. DeBondt, *Introduction to Belgian Law* 150 (cohabiting parents) (2001). But the situation is different where only one parent has custody rights. Thus, "where a child of [two years of age] [was] in the sole lawful custody of the mother, his situation with regard to habitual residence will necessarily be the same as hers." *In re J (C v. S)* [1990] 2 AC 562, 579.

filed a petition under the Convention alleging that his son had been wrongfully removed. The district court denied the petition on the ground that return of the child would subject him to a grave risk of harm. The court of appeals reversed and remanded. The mother contended that the court should affirm, notwithstanding the erroneous grave risk of harm determination, on the ground that the infant was not an habitual resident of Mexico. The court rejected the argument and remanded for a determination of the child's habitual residence, stating,

> To say that the child's habitual residence derived from his mother would be inconsistent with the Convention, for it would reward an abducting parent and create an impermissible presumption that the child's habitual residence is where the mother happens to be.

58 F.3d at 379.

The instant case differs from *Nunez-Escudero*. Because the petitioner and respondent had married in Mexico and lived there together for nearly a year before the child was born, a basis existed for finding the child's habitual residence to be in Mexico. Here, in contrast, the district court found that respondent, at petitioner's urging, had traveled to Belgium to avoid the cost of the birth of the child and intended to live there only temporarily. She retained her ties to New York, not having taken her non-maternity clothes, holding only a three-month visa and living out of the two suitcases she brought with her. Thus, there is lacking the requisite "degree of common purpose" to habitually reside in Belgium. As explained in *Re Bates*,

> There must be a degree of settled purpose . . . . All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled.

No. CA 122-89, High Court of Justice, Family Div'l Ct. Royal Courts of Justice, United Kingdom (1989), quoted in *Feder*, 63 F.3d 223.

Because petitioner and respondent lacked the "shared intentions regarding their child's presence [in Belgium]," *Feder*, 63 F.3d at 224, Baby S did not become an habitual

resident there. Even if petitioner intended that he become an habitual resident, respondent evidenced no such intention. Addressing the status of a newborn child, one Scottish commentator said:

> [A] newborn child born in the country where his . . . parents have their habitual residence could normally be regarded as habitually resident in that country. Where a child is born while his . . . mother is temporarily present in a country other than that of her habitual residence it does seem, however, that the child will normally have no habitual residence until living in a country on a footing of some stability.

Dr. E. M. Clive, "The Concept of Habitual Residence," *The Juridical Review part 3*, 138, 146 (1997).

Based on the district court's factual findings, which have not been challenged, we conclude that petitioner failed to prove that Baby S was habitually resident in Belgium.

We affirm the district court's order.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*