In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2424

AGNIESZKA KIJOWSKA,

*Plaintiff-Appellee*,

*v.*

TROY L. HAINES,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 478—**Ruben Castillo**, *Judge*.

———————

ARGUED JULY 20, 2006—DECIDED JULY 20, 2006
OPINION SEPTEMBER 8, 2006

———————

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq*., implementing the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980), entitles a person whose child has been wrongfully removed to the United States, usually by a parent, to petition a federal court to order the child returned. 42 U.S.C. § 11603(b). The convention is aimed at parties to custody battles who remove the child from the child's domicile to a country whose courts the removing

parent thinks more likely to side with that parent. *Koch v. Koch*, 450 F.3d 703, 712 (7th Cir. 2006); *Bader v. Kramer*, 445 F.3d 346, 349 (4th Cir. 2006); *Silverman v. Silverman*, 338 F.3d 886, 899 (8th Cir. 2003). To prevent this unsavory form of forum shopping, the convention requires that the determination of whether the removal of the child was wrongful be made under the law of the country in which the child has his or her "habitual residence." Hague Convention, Preamble; International Child Abduction Remedies Act, 42 U.S.C. § 11603(f)(1); *Koch v. Koch*, *supra*, 450 F.3d at 711; *Karkkainen v. Kovalchuck*, 445 F.3d 280, 287-88 (3d Cir. 2006). The determination of "habitual residence" is to be made on the basis of the everyday meaning of these words rather than the legal meaning that a particular jurisdiction attaches to them, as otherwise forum shopping would come in by the back door—each contestant would seek a forum that would define "habitual residence" in the contestant's favor. *Koch v. Koch*; *supra*, 450 F.3d at 712.

Agnieszka Kijowska, a citizen and resident of Poland, filed a petition under the Hague Convention and its implementing federal statute in the federal district court in Chicago, seeking an order that her daughter, Maya Kijowska, currently living in Illinois with Maya's father, Troy Haines, be returned to her mother in Poland. The district judge, after conducting an evidentiary hearing, ordered the child returned, and Haines appealed. On June 9 we stayed the district judge's order pending appeal but at the same time ordered accelerated briefing and argument. After conferring following the oral argument on July 20, we dissolved the stay and affirmed the district judge's order, with a notation that an opinion would follow.

Kijowska had entered the United States on a student visa, had had an affair with Haines, and in October 2004

had given birth to Maya—by which time she had overstayed her visa and had thus become an illegal alien. Two months later she returned with Maya to Poland without notifying Haines, who had, however, disavowed seeking custody of the infant. Six months after that, mother and child flew back to the United States, on a tourist visa, to meet Haines. Apparently Kijowska thought there was some prospect of a reconciliation with Haines, from whom she had been estranged since shortly after Maya's birth. But immigration officers at the Detroit airport, where she landed with her daughter and was met by Haines, refused entry to the United States to Kijowska after Haines told an immigration officer (falsely, as we shall see) that she was planning to remain in the United States and thus overstay her tourist visa. Haines showed the officer an order that he had obtained ex parte from an Illinois state court, shortly after mother and child had returned to Poland the previous December, granting him custody of the child. Impressed by the order, the officer permitted Haines to take Maya. The mother was forced to return to Poland alone. She then filed this suit.

Haines argues that as of December 2004, when Kijowska took the baby back with her to Poland, the baby's habitual residence was the United States and that Kijowska's removal of her was wrongful, that is, "in breach of [Haines's] rights of custody" under U.S., specifically Illinois, law. Hague Convention Art. 3(a); 42 U.S.C. § 11603(e)(1)(A).

"Habitual residence" sounds like "domicile," which in law refers to the place that a person considers to be his permanent home. E.g., *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Eastman v. University of Michigan*, 30 F.3d 670, 672-73 (6th Cir. 1994). But it is not domicile, *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993), and

not only or mainly because a small child lacks the state of mind required for a determination of domicile so defined. Rather, because domicile is defined differently in different jurisdictions, see, e.g., *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 45-46 (1989), equating habitual residence to domicile would re-raise the spectre of forum shopping by encouraging a parent to remove the child to a jurisdiction having a view of domicile more favorable to that parent's case. So, consistent with Congress's recognition of "the need for uniform international interpretation of the Convention," 42 U.S.C. § 11601(b)(3)(B), "habitual residence" should bear a uniform meaning, independent of any jurisidiction's notion of domicile. *Koch v. Koch, supra*, 450 F.3d at 712.

But that leaves the problem of defining "habitual residence," and it is a difficult problem. "Residence" is pretty clear, but what does "habitual" mean? The cases speak of the "shared intent" of the parents, e.g., *In re Application of Ariel Adan*, 437 F.3d 381, 392 (3d Cir. 2006); *Gitter v. Gitter*, 396 F.3d 124, 134 (2d Cir. 2005), but that formula does not work when as in this case the parents are estranged essentially from the outset, the birth of the child (or indeed before). See *Delvoye v. Lee*, 329 F.3d 330, 333 (3d Cir. 2003). The length of the child's residence in the country of one of the parents cannot be decisive. "[A] parent cannot create a new 'habitual residence' by the wrongful removal and sequestering of a child." *Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d. Cir. 2001); see also *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001); *Friedrich v. Friedrich, supra*, 983 F.2d at 1402. That would invite abduction. Suppose the day after Maya was born, Haines had surreptitiously removed her from her bassinet, flown with her to Argentina, established his domicile there, claimed Argentina as Maya's habitual residence, and invoked Argentinian custody law to define

his rights over her. That would be as inappropriate a basis for locating habitual residence in Argentina as if Haines had outright kidnapped Maya when she and her mother returned to the United States in May of 2005, and was now arguing that nevertheless Maya has acquired a new habitual residence, in the United States, by virtue of having lived here since then.

When Maya was taken by her mother from the United States to Poland at the age of two months, she could not be said to have acquired a "habitual" residence in the United States. She was a citizen of this country, but only because birth on U.S. soil automatically confers U.S. citizenship. She was a citizen of Poland as well, and her brief sojourn in the United States as an infant hardly warranted an inference that she had obtained a residence separate from that of her mother, which was of course Poland. Kijowska was merely a temporary sojourner in the United States. Indeed, as an illegal alien, she could be arrested and deported at any time; her link to this country was particularly tenuous. She can hardly be criticized, having become estranged from Haines—who had even threatened to have her deported, perhaps as a way of trying to separate Maya from her—for deciding to return to Poland and take the child with her. This was not abduction, because she was not removing the child from the child's habitual residence.

We are not saying that an infant's residence is automatically that of her mother. *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 379 (8th Cir. 1995). Such a rule would imply that a mother's removal of an infant would never be wrongful under the Hague Convention, even if she was engaged in exactly the kind of forum shopping that the Convention condemns. But it impossible to reconcile Haines's initial disavowal of custody over Maya, and Kijowska's expecta-

tion (based on her immigration status but also on her family circumstances in Poland, discussed below) that she would be returning with Maya to Poland, with Maya's having acquired a habitual residence in the United States.

If this is correct, then it is inescapable that when Maya and her mother returned to the United States in May 2005, the child—who had been living in Poland with her mother uninterruptedly for the six months since the move there—was still a habitual resident of that country. See, e.g., *Karkkainen v. Kovalchuk*, *supra*, 445 F.3d at 291-92 ("habitual residence is the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the child's perspective"). The circumstances indicate that the trip in May was intended to be a brief visit rather than a relocation. Kijowska may have hoped for a reconciliation but she had hedged by buying a round-trip ticket and leaving her other daughter behind in Poland. Maya had lived in Poland for most of her life at that point and her mother, who was Maya's primary caretaker, could not reside legally in the United States unless she married an American, which she had no plans to do. Maya's half-sister, with whom Maya evidently had a close relationship, likewise was a citizen of Poland. So keeping Maya in the United States, as Haines did, removed her from the family and social environment in which her life had developed. *Koch v. Koch, supra*, 450 F.3d at 711.

Even if we cast our eyes back to December 2004, when Kijowska left the United States with Maya, there is no evidence to suggest an intention on the part of either parent that Maya would live in the United States. The parents had no plans to marry and although Haines wanted to be recognized as Maya's father, he gave no indication of seeking custody of her.

We conclude that Maya's habitual residence at the time she left the United States was her mother's habitual residence, which was Poland. This made the taking of the child from the mother's custody in May 2005 a wrongful removal; for under Polish law, the parties agree, an unwed mother has custody of her child.

Against this Haines argues that the order of the Illinois state court granting him custody of Maya makes the United States her habitual residence. The order, quite apart from its being ex parte, is irrelevant. *Yang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005); *Silverman v. Silverman*, *supra*, 338 F.3d at 895; *Miller v. Miller*, 240 F.3d at 399. The Hague Convention requires that the child's custody be determined under the law of the child's place of habitual residence, which we have just seen is not Illinois but Poland. Haines can seek to wrest custody of Maya from Kijowska, but only by proceeding under the laws of Poland.

There is an alternative basis for our conclusion. Suppose that Maya's habitual residence when her mother took her to Poland in December 2004 was the United States and that Kijowska's removal of her was wrongful. Haines's remedy would have been to file a petition under the Hague Convention and its implementing federal statute. He did not do that. He merely sought a custody order from an Illinois state court and then used that order to help obtain the self-help remedy of taking the child from the airport. To give a legal advantage to an abductor who has a perfectly good legal remedy in lieu of abduction yet failed to pursue it would be contrary to the Hague Convention's goal of discouraging abductions by denying to the abductor any legal advantage from the abduction. By failing to pursue his legal remedy, Haines enabled Maya to obtain a habitual residence in the country to which her mother took her, even

if the initial taking was wrongful. For as we have seen, there is no doubt that if the circumstances in which Maya was taken to Poland are set to one side, by May 2005 she was indeed a habitual resident of Poland.

Still another alternative that leads to the same result is to assume that Maya had no habitual residence as of December 2004. *Holder v. Holder*, 392 F.3d 1009, 1020 (9th Cir. 2004) *Delvoye v. Lee*, *supra*, 329 F.3d at 333. If so, her mother's taking her to Poland was not wrongful, and her acquisition of habitual residence there was unproblematic.

This completes our consideration of the appeal. But for future reference we want to explain why we denied Kijowska's motion to dissolve the stay, pending resolution of the appeal, that we had granted on Haines's motion. Kijowska's principal argument was that the Uniform Child Custody Jurisdiction and Enforcement Act, in force in Illinois, prohibits such a stay. The Act forbids the stay of "an order enforcing a child-custody determination pending appeal" unless the court "enters a temporary emergency order," which it can do only if "the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." 750 ILCS 36/204(a), 36/314. Neither condition is fulfilled here.

But procedure in federal courts is governed by federal rather than state law even in cases in which state law provides the rule of decision. E.g., *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Anderson v. Griffin*, 397 F.3d 515, 520 (7th Cir. 2005); *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006) ("federal law, rather than state law, invariably governs procedural matters in federal courts"). Granted, there is no sharp line between procedure and substance, e.g., *Gasperini v. Center for Humanities, Inc.*, *supra*, 518 U.S. at 427; *Houben v. Telular Corp.*, 309

F.3d 1028, 1039 (7th Cir. 2002); *Ashland Chemicals, Inc. v. Barco, Inc.*, 123 F.3d 261, 265 (5th Cir. 1997), and the conditions for the grant of a stay, which is a form of injunction, may, like an injunction, reflect substantive policy. See *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir. 2003); *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988). That is true, for example, of the automatic stay in bankruptcy. It is true of the uniform child-custody law as well, which is based on concerns for child welfare rather than on concerns with appellate procedure in general. However, the Hague Convention, which as we know seeks to discourage forum shopping in international child-custody disputes when it takes the form of removing a child to the jurisdiction preferred by one of the parents, *Koch v. Koch, supra*, 450 F.3d at 712; *Bader v. Kramer, supra*, 445 F.3d at 349; *Baxter v. Baxter*, 423 F.3d 363, 367 (3d Cir. 2005); *Silverman v. Silverman, supra*, 338 F.3d at 899, pre-empts conflicting state policies. *Yang v. Tsui, supra*, 416 F.3d at 201; *Mozes v. Mozes*, 239 F.3d 1067, 1085 n. 55 (9th Cir. 2001); *Silverman v. Silverman, supra*, 338 F.3d at 895. And this is apart from the irony of Kijowska's appealing to Illinois child-custody law, the very law behind which Haines seeks to shelter.

The Hague Convention and its implementing federal statute do not set forth a standard for the granting of stays pending appeal of orders directing (or refusing to direct) the return of children to foreign countries; and we are given no reason to think that a thumb should be placed, as the uniform child-custody law does, on the normal balancing that federal courts use to decide whether to grant a stay. Maya had been living in the United States for more than a year (May 2005 to June 2006) when we granted the stay pending appeal, and to have sent her to Poland at a time when Haines's appeal was pending could have caused

serious harm to the child by reuniting her with her mother for only a short period of time should the district court's order be reversed. It was best to continue the stay in force until the appeal was decided, but to accelerate the appeal proceedings, as we did. Illinois law could not control the process.

JUDGMENT AFFIRMED; STAY DISSOLVED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*