2011 Ark. App. 566
**Kolbrun Elan VELA, Appellant**

v.

**Isak Thor RAGNARSSON, Appellee.**

**No. CA 11–351.**

Court of Appeals of Arkansas.

Sept. 28, 2011.

George Alan Wooten, Fort Smith, Emily Milholen Reynolds, Rogers, for appellant.

W.H. Taylor, Victoria Hargis Bruton, Fayetteville, for appellee.

ROBERT J. GLADWIN, Judge.

The Benton County Circuit Court entered an order returning six-year-old G.V. to his father's residence in Iceland under the terms of the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague"). We affirm the court's order.

The child's mother, appellant Kolbrun Vela, is a resident of the United States and holds dual citizenship in the United States and Iceland. The father, appellee Isak Ragnarsson, is an Icelandic citizen and resident. Vela became pregnant in Iceland in 2004 and moved to the United States to give birth. Ragnarsson traveled from Iceland and was present at the birth. Afterward, he returned home, and Vela maintained custody of G.V. in the United States.

In early 2005, Vela returned to Iceland with G.V. During the next four-and-a-half years, she and the child intermittently resided in America and Iceland, with the majority of their time being spent in Iceland. Ragnarsson saw G.V. on a fairly regular basis while the child was in Iceland and sometimes kept him overnight.

In August 2009, Vela and G.V. left Iceland to reside in Killeen, Texas. When the child began asking about his father, the parties discussed arrangements for him to see Ragnarsson. In one email, Vela proposed the idea of G.V. staying with Ragnarsson and visiting her during summers and vacations. She explained that she had difficulty caring for G.V. and another son (who was not Ragnarsson's) and had little family help.

According to Ragnarsson, the parties eventually decided that G.V. should return to Iceland and live with him. In January 2010, he traveled to Texas, where he and Vela signed two documents in the presence of a notary. The first document gave Ragnarsson permission to leave the country with G.V. The second, which Vela later denied signing, was a joint-custody agreement. The agreement provided that G.V.'s legal residence would be with Ragnarsson, that Vela would pay child support beginning January 1, 2010, and that the parties wanted the contract approved under Icelandic law.

After the documents were signed, Ragnarsson returned to Iceland with G.V. Upon arriving, he registered the joint-custody agreement with an Icelandic District Commissioner, who confirmed the agreement in accordance with Iceland's Act in Respect of Children. Act 76/2003, art. 32. G.V. then lived in Iceland exclusively and uninterruptedly over the next six months, and he was scheduled to start school there in August 2010. He communicated with his mother primarily through Facebook and email.

In June 2010, Vela suggested to Ragnarsson that G.V. come to the United States for a summer vacation. Ragnarsson agreed and, with Vela's knowledge, bought the child a three-week, round-trip

ticket to America. At the end of the three weeks, however, Vela refused to return G.V. to Iceland. She later admitted that she had no intention of sending the boy back and deliberately misled Ragnarsson into believing that she would do so. Vela retained physical custody of G.V. in the United States and, at some point, moved to Benton County, Arkansas.

On October 18, 2010, Ragnarsson filed a petition in Benton County Circuit Court, seeking G.V.'s return under the Hague. The court conducted an evidentiary hearing and found that the parties had executed a joint-custody agreement; that the child's legal residence was in Iceland with Ragnarsson; and that the child had been wrongfully detained in the United States. The court then ordered G.V. returned to Iceland as the appropriate forum under the Hague for the parties' custody and visitation disputes. Vela filed this appeal.

The Hague was adopted in 1980 with the purpose of securing a child's prompt return to his State of habitual residence if he was wrongfully removed therefrom or wrongfully retained in another State.[1] A person seeking a child's return may file a petition in any court that is authorized to exercise jurisdiction where the child is located, including a state court in the United States. 42 U.S.C. § 11603 (2009). If the court finds that the child was wrongfully removed or retained, and if the judicial proceeding was commenced less than one year after such removal or retention, the court "shall order the return of the child forthwith." Hague Convention art. 12, T.I.A.S. 11670. A case arising under the Hague is not a custody proceeding. Hague Convention arts. 16 & 19, T.I.A.S. 11670; *Courdin v. Courdin*, 2010 Ark. App. 314, 375 S.W.3d 657. Rather, the court need ascertain only whether the removal or retention was wrongful under the law of the child's habitual residence and, if so, order the child's return to his habitual residence, where the courts of that venue can decide the merits of the custody dispute. *See Courdin*, 2010 Ark. App. 314, 375 S.W.3d 657.

In this appeal, Vela argues that the circuit court erred in applying the Hague's provisions. She essentially claims that G.V.'s habitual residence was with her and that she did not wrongfully retain the child in the United States. Our review presents a mixed question of law and fact. *Courdin*, 2010 Ark. App. 314, 375 S.W.3d 657. We accept the circuit court's factual findings unless they are clearly erroneous, but we exercise de novo review of the court's application of legal principles to those facts. *Id.*

We first address G.V.'s habitual residence. The Hague does not define habitual residence but leaves the courts to fashion their own means of analyzing this question. In *Courdin, supra*, we recognized that determining a child's habitual residence requires consideration of many factors, including the purpose of the move to a new country from the child's perspective; parental intent; the change in geography; the passage of time; the parents' citizenship; and the acclimatization of the child. Federal courts have relied on one or all of these factors. *See Barzilay v. Barzilay*, 600 F.3d 912 (8th Cir.2010); *Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2007); *Kijowska v. Haines*, 463 F.3d 583 (7th Cir.2006); *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir.2001). The consensus among our courts appears to be that a child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and with a degree of settled purpose. A "settled purpose" does not mean an

---

1. Member countries under the Hague are referred to as States or Contracting States.

intent to stay in a location indefinitely; all that is necessary is that the purpose of living at the location have a sufficient degree of continuity to be properly described as settled. *See Mozes*, 239 F.3d 1067.

Applying these principles to the present case, we conclude that no clear error occurred on the question of G.V.'s habitual residence. The parents agreed that G.V. would move to Iceland and establish legal residence there with his father. The child then made the geographic move and remained in Iceland for six months, with the anticipation of staying longer and attending school. The custody agreement contained no end date for G.V.'s time in Iceland, and Vela sent all of the child's belongings with him, indicating a stay of extreme length or indefinite duration. We have recognized that, if a child goes to live with a parent in that parent's native land on an open-ended basis, it is entirely foreseeable that the child will soon begin to lose habitual ties to any prior residence, and the parent who agrees to such an arrangement without any clear limitations may be held to accept that eventuality. *Courdin*, 2010 Ark. App. 314, 375 S.W.3d 657. Moreover, G.V. had lived in Iceland for much of his life and shared Icelandic citizenship with his father and dual American/Icelandic citizenship with his mother. Consequently, from both the child's and the parents' perspectives, G.V.'s residency in Iceland may be viewed as having a settled purpose, a degree of continuity, and a period of endurance long enough to allow G.V.'s acclimatization to that country.

Vela argues that G.V.'s trip to Iceland in January 2010 was intended not as a change of habitual residence but simply as a temporary visit with his father. She claimed at trial that she did not sign the joint-custody agreement but only a document stating that G.V. would be in Iceland temporarily. She could not provide the alleged document to the court, however, and stated that it had been lost. Additionally, Ragnarsson produced photographs of Vela signing what appeared to be the joint-custody agreement. The terms of the joint-custody agreement itself demonstrate the settled, long-term nature of G.V.'s presence in Iceland. It declared Iceland to be G.V.'s legal residence and arranged for Vela's payment of child support. Immediately after the agreement was signed, G.V. traveled to Iceland and remained there for a significant period of time until Vela unexpectedly retained him in the United States. Moreover, Vela did not request G.V.'s return from Iceland on the ground that his visit was at an end but resorted to misrepresentation to keep the child in the United States.

Vela also argues that, based on her many years as G.V.'s caretaker and sole custodian, the child's habitual residence was with her. She further claims that Ragnarsson admitted as much at trial. Habitual residence under the Hague is not determined by which parent has spent more time with the child; rather, the purpose of the Hague is to determine which *country* has the paramount interest in the child. *See Courdin*, 2010 Ark. App. 314, 375 S.W.3d 657. The question of which parent has the greater interest is a matter going to custody, which should be addressed only after the Hague issues are resolved. *See id.* As for Ragnarsson's purported admission that G.V.'s habitual residence was with Vela, we decline to view his brief testimony, made in response to a question by Vela's attorney, as anything more than an acknowledgment that the child had spent most of his life with Vela. It is not conclusive on the legal question of habitual residence.

Having determined that G.V.'s habitual residence was in Iceland at the time

Vela retained him in the United States, we turn now to the question of whether the circuit court erred in ruling that Vela's retention was wrongful. The Hague provides that the removal or retention of a child is considered wrongful where

(a) it is in breach of rights of custody attributed to a person ... either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b) at the time of the removal or retention, those rights were actually exercised, either jointly or alone, or would have been exercised but for the removal or retention.

Hague Convention, art. 3, T.I.A.S. 11670. The "rights of custody" referred to in Article 3(a) may arise by operation of law, by judicial or administrative decision, or by "reason of an agreement having legal effect under the laws of that State." *Id.*

Vela argues that Ragnarsson's custody rights under the Hague cannot rest on the parties' joint-custody agreement because that agreement is legally ineffective in Arkansas, Texas, and Iceland. Only Icelandic law is relevant. The Hague provides that a person's "rights of custody" for purposes of Article 3(a) are to be adjudged "under the law of the State in which the child was habitually resident immediately before the removal or retention." The Hague then directs us to the "laws of that State" as governing the custody agreement's legal effect. Hague Convention, art. 3(b), T.I.A.S. 11670. Given our holding that G.V.'s habitual residence was in Iceland, we must look to the law of that nation in determining the efficacy of the parties' joint-custody agreement.

Iceland's Act in Respect of Children provides that parents may agree to joint custody of a child. Act 76/2003, art. 32. The agreement may be for a set period,

although not for less than six months, and must specify with which parent the child shall have his legal residence. *Id.* The agreement becomes effective when it is approved by a district commissioner. *Id.*

The joint-custody agreement in this case followed the Act's requirements, specifically by designating the child's legal residence, and was registered and confirmed by a district commissioner. It therefore became effective under Icelandic law. Vela points out that the agreement contained no specific provisions regarding the joint-custody arrangement. But Iceland does not appear to require such provisions in order to constitute a legally valid joint-custody agreement. Vela also claims the record contains no proof that the commissioner, in confirming the agreement, instructed the parties as to its legal effect, as one clause of Article 32 provides. We decline to look behind the circumstances of the commissioner's approval or confirmation, however. The laws of Iceland clearly provide that a joint-custody agreement "becomes effective" upon the commissioner's approval and, because that occurred here as evidenced by an official record, we will consider it done. Accordingly, Ragnarsson was clothed with legal grounds to assert joint-custody rights in Iceland, and his rights were breached under the terms of the Hague. We therefore affirm the circuit court's finding that G.V.'s retention in the United States was wrongful.

■ Vela's final argument is that returning G.V. to Iceland was inequitable under the circumstances of this case. Even if it is proper to consider the balance of equities in a Hague case, *see Mozes*, 239 F.3d 1067 (indicating that it is not), we observe that the equities here favor Ragnarsson as much as Vela. The parties agreed that G.V.'s legal residence would be in Iceland with Ragnarsson, yet it was Vela who later renounced the agreement

and employed deceit to keep the child from that residence. Vela also asserts that Ragnarsson has not accepted responsibility as G.V.'s father. On the contrary, both parties acknowledged Ragnarsson's paternity at trial, and Ragnarsson has acted as a father during the better part of G.V.'s life. He was present at the child's birth, had a relationship with the child while the parties lived in Iceland, entered into a joint-custody agreement in his capacity as the child's father, and maintained physical custody of G.V. in Iceland for six months before Vela retained the child in the United States.

Vela further implies that the circuit court should have granted her visitation rights upon G.V.'s return to Iceland. As noted earlier, a proceeding under the Hague does not address these types of custody and access issues. Its purpose is to restore the status quo that existed before the child's wrongful retention and allow the forum of the child's habitual residence to determine custody matters.

Affirmed.

WYNNE and GRUBER, JJ., agree.