[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17538
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-02016-SDM-AEP


VERONIKA MARCOSKI,

                                        Respondent - Appellant,

versus

JAN RATH,

                                        Petitioner - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 27, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

This case, which concerns a two-year-old boy named L.N.R., arises under the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, as implemented by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq*.  Veronika Marcoski, L.N.R.'s mother, appeals the district court's judgment ordering that L.N.R. be returned to the Czech Republic, where he was born.  Jan Rath, L.N.R.'s father, defends the judgment.  Because we write for the parties, we set out only what is necessary to explain our decision.

The district court adopted the report and recommendation issued by the magistrate judge, who held a seven-day evidentiary hearing.  *See* D.E. 110; D.E. 84.  The district found that Mr. Rath and Ms. Marcoski were "in a committed relationship with a shared intent for the foreseeable future to live with L.N.R. in the Czech Republic."  D.E. 84 at 16.  *See also id*. at 39.

Ms. Marcoski argues that the district court erred in determining that the Czech Republic was L.N.R.'s "habitual residence" at the time she took him to the United States.  The issue of "habitual residence" presents a mixed question of fact and law, meaning that we review the historical facts found by the district court for clear error, and we review the application of law to those facts *de novo*.  *See Ruiz v. Tenorio*, 392 F.3d 1247, 1257 n.5 (11th Cir. 2004).  So, we review the district court's finding as to the parents' shared intent for the child's habitual residence for

2

clear error, and the ultimate determination of habitual residence *de novo*. *See id*. at 1256–57 & n.5.

In her brief, Ms. Marcoski challenges some of the district court's underlying factual findings (e.g., the finding that she and Mr. Rath were in a committed relationship and lived together in the Czech Republic with L.N.R. until January of 2016). She also contends that certain evidence establishes that L.N.R.'s "habitual residence" was not in the Czech Republic. *See* Appellant's Br. at 19–21, 25–35.

For example, Ms. Marcoski makes a specific challenge to the district court's finding that she and Mr. Rath lived together before L.N.R.'s birth and through January of 2016. She points to testimony from Mr. Rath, his parents, one of his witnesses, and two of her family members to support her contention that she and Mr. Rath never lived together. Although some of the cited testimony does support her argument that she did not live with Mr. Rath, some of it is unclear on the topic or suggests that the two *were* living together. Given that Mr. Rath testified that the two did live together, we cannot discern any clear error.

We recognize that Mr. Rath and Ms. Marcoski (and their witnesses) presented very different accounts of their relationship, and of their plans for L.N.R.'s upbringing. The district court, however, found that Mr. Rath was "credible and [Ms. Marcoski was] not credible," and provided detailed reasons for its view of the evidence on important disputed issues, including whether they were

3

living together.  *See, e.g.*, D.E. 84 at 16–29.  We owe the district court's assessment great deference.  *See Anderson v.  City of Bessemer City*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses . . . that finding[ ] . . . can virtually never be clear error.").  Deference is especially warranted here because Mr. Rath asserted firsthand knowledge of many of the relevant facts.

Ms. Marcoski is correct that the district court clearly erred in two of its factual findings.  These errors, however, relate to subsidiary historical facts and, as we explain, do not change the fact that substantial evidence supports the district court's ultimate finding regarding shared intent.  That is, any error made by the district court "was harmless because there was plenty of other evidence proving the same [ultimate] fact."  *Bobo v. Tenn. Valley Auth.*, 855 F.3d 1294, 1300 (11th Cir. 2017).  *See also Mondaca-Vega v. Lynch*, 808 F.3d 413, 427 (9th Cir. 2015) ("But it is hardly conceivable that absent this [factual] mistake, the district court would have reached a different conclusion, given the ample other reasons to doubt the petitioner's credibility.").

First, Ms. Marcoski challenges the district court's reliance on a set of cable television documents to support its finding that she and Mr. Rath were living together before January of 2016.  The district court stated:

> The fact that, on May 11, 2016, Petitioner [Mr. Rath] canceled his cable subscription at his Sevcikova apartment, and then a few days

4

later, on May 16, 2015, he opened up a cable subscription for the Maltezske apartment is highly persuasive that Petitioner and Respondent [Ms. Marcoski] were cohabitating and were moving residences in anticipation of L.N.R's birth.

D.E. 84 at 21. In fact, the two documents were not "a few days" apart, but about a year apart—one in May of 2015 and the other in May of 2016—as the dates on the documents indicate, and referenced the same apartment.

Notwithstanding this factual error, the testimony concerning the cable television documents still supports the district court's finding about cohabitation. The two documents referred to the same apartment—the Maltezske apartment—where the district court found that the couple lived together. The May 2015 document shows that Mr. Rath started a cable television subscription at the Maltezske apartment, suggesting that he was going to move into that apartment. The May 2016 document reflects that Mr. Rath eventually cancelled the cable television service after Ms. Marcoski left the Czech Republic with L.N.R.

Second, Ms. Marcoski argues that the district court incorrectly found that the Maltezske apartment she and Mr. Rath shared was larger than Mr. Rath's, when in fact Mr. Rath testified that it was smaller. Ms. Marcoski is correct about this, but the error does not warrant reversal.

The district court referred to the size of the apartment in recounting why Mr. Rath claimed he and Ms. Marcoski moved into the Maltezske apartment. Mr. Rath testified that he and Ms. Marcoski moved into the Maltzeske apartment in

5

part because Ms. Marcoski "found it as a better place to stay," as it was close to the center of town and parks, and was in the historical area of Prague. *See* D.E. 62 at 197. The district court's error in describing Mr. Rath's testimony does not detract from the finding that the pair was living together before January of 2016. Mr. Rath provided a reason why Ms. Marcoski, despite the smaller size, would want to move into the Maltezske apartment. And, as noted, the district court found Mr. Rath credible.

In sum, we see no basis for setting aside the district court's credibility assessments and factual findings. Ms. Marcoski presents an interpretation of the evidence that could have allowed the district court to find in her favor, but "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

We also conclude that, in the face of the conflicting accounts presented by the parties, the district court properly considered all of the available evidence to determine L.N.R.'s "habitual residence." *See Mozes v. Mozes*, 239 F.3d 1067, 1076 (9th Cir. 2001) (adopted by *Ruiz*, 392 F.3d at 1252–53). Based on its factual findings, the district court did not err in concluding that L.N.R.'s habitual residence was the Czech Republic at the time of his removal to the United States. *Cf. Delvoye v. Lee*, 329 F.3d 330, 334 (3d Cir. 2003) ("A newborn child born in the country where his parents have their habitual residence could normally be

regarded as habitually resident in that country." (alterations adopted)) (quoting

Dr. E.M. Clive, "The Concept of Habitual Residence," *The Juridical Review part*

*3*, 138, 146 (1997))).

Accordingly, we affirm the district court's ruling.

**AFFIRMED.**